John M. WELCH, Plaintiff-Appellant,

The Travelers Insurance Company, Intervenor,

v.

HEAT RESEARCH CORPORATION, Defendant-Appellee.

No. 80–1665

Summary Calendar.

United States Court of Appeals, Fifth Circuit. Unit A

May 7, 1981.

Ammerman & Ammerman, Jim Ammerman, Don Stokes, Marshall, Tex., for plaintiff-appellant.

Blake Erskine, Erskine, Dunn & McMahon, Longview, Tex., for defendant-appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

PER CURIAM:

Plaintiff, John M. Welch, appeals District Court's judgment entered on order granting defendant's, Heat Research Corp., motion for directed verdict in diversity action for negligence. Welch complains District Court erred in (i) determining Heat Research owed no duty to him which was breached, and (ii) directing the verdict in favor of Heat Research. We affirm.

I.

Welch was injured while employed as assistant leadman[1] for Fabsteel, Corporation of Waskom, Texas. Heat Research had secured Fabsteel as an independent contractor[2] to fabricate radiant floor panels for heaters to be used in the production of ammonia. The fabrication process required Fabsteel to weld three rectangular pieces of steel weighing between 1500 and 2000 pounds each to a larger steel frame. Heat Research furnished plans and specifications to Fabsteel setting forth specifically where and how many welds were to be made as well as the number and size of bolts to be used in order to connect the three panels.

---

1. As assistant leadman, Welch was the assistant foreman over Fabsteel's welders.

2. It is undisputed by either party that Fabsteel was an independent contractor.

All fabrication work was performed by Fabsteel at its facility in Waskom. Welch was crushed beneath the center steel plate after it fell from the larger rectangular panel as he was lifting it by means of a power hoist in order to complete his welding process.

Seeking to recover damages for his severe injuries, loss of earning capacity, and medical expenses, Welch brought this action alleging Heat Research was guilty of negligence which proximately caused his injuries by furnishing Fabsteel with a defective set of plans and in failing to warn him or Fabsteel of the hazards involved in fabricating the floor panels. After Welch rested at trial, however, District Court granted Heat Research's motion for directed verdict, concluding as a matter of law Heat Research owed no duty of care to Welch for which it could be held legally accountable as the evidence adduced at trial, upon which reasonable minds could not have differed, showed the fabrication process was exclusively under the control of Fabsteel.

## II.

■ In our review of District Court's direction of the verdict, we apply the same standards to make our determination. *Boeing Co. v. Shipman*, 411 F.2d 365, 374–76 (5th Cir. 1969) (en banc). *See also Bridges v. Groendyke Transport, Inc.*, 553 F.2d 877, 878 (5th Cir. 1977). That is, we must ascertain whether District Court properly substituted its judgment for the jury. *Downs v. J. M. Haber Corp.*, 580 F.2d 794, 798 (5th Cir. 1978). Although it is well settled negligence is a question of fact to be determined by a jury, *id.* at 797, whether a defendant owes a plaintiff a legal duty is a question of law while resolution of a defendant's possible breach of a duty is a question of fact. *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978).

District Court's direction of the verdict in this case required it to determine whether a legal duty was owed by Heat Research to Welch and if so whether it was breached. Welch challenges the propriety of District Court's conclusion in light of *Parker v.*

*Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978), as the Texas Supreme Court there undertook to deal with or deal out the "... complex and confusing no-duty rule," *id.* at 516, a "... doctrine [which] is so elusive that precedent is non-predictive and unhelpful," *id.* at 518, and a "... doctrine [which] has been generally condemned." *Id.* Consequently, he argues "[t]he test of duty turns upon knowledge that the occurrence causing the injury will happen or could happen based upon the ordinarily prudent person standard or actual knowledge itself."

■ We find, however, a defendant generally has no duty to warn of a danger in order to avoid imputation of negligence where no danger is reasonably to be anticipated. *Watkins v. Beicker*, 579 S.W.2d 519, 522 (Tex.Civ.App. 1979). Welch's contentions regarding abolition of the "no duty" concepts by *Parker* are of limited value in this case. Whatever might be its impact outside of premises cases, *see, e. g., Clayton v. United States*, 457 F.Supp. 173, 175 (N.D. Tex. 1978); *New Terminal Warehouse Corp. v. Wilson*, 589 S.W.2d 465, 469 (Tex. Civ.App. 1979), it deals with the slippery concept of no-duty in open and obvious situations obviously not involved here.

■ Texas permits vicarious liability suits against general contractors (or the party for whom the independent contractor is performing the work) under the doctrine of inherently dangerous activity. Texas recognizes no affirmative duty running to employees of independent contractors performing work in cases where the independent contractor is in possession and control of the manner in which the work is to be performed and the general contractor (or owner) has not prescribed, by designs, specifications, or otherwise the manner in which the work is to be accomplished. *Alexander v. United States*, 605 F.2d 828, 835 (5th Cir. 1979). Where the manner in which a structure is assembled is committed to the expertise of the independent contractor, "Texas courts have long recognized that during construction the contractor, rather than the designer, is responsible for the structural stability for the structure, even where the

instability arises out of a flaw in the designated plans." *Cady v. E. I. DuPont de Nemours & Co.*, 437 F.Supp. 1030, 1033 (S.D.Tex. 1977), *aff'd*, 618 F.2d 782 (5th Cir. 1980) (*citing Lonergan v. San Antonio Loan & Trust Co.*, 101 Tex. 63, 104 S.W. 1061 (1907)).

The record amply supports application of these standards to this case. Welch was injured while employed by Fabsteel and working in its Waskom plant. Heat Research's only connection with Welch's injuries is that Welch was fabricating a product for Heat Research which would meet the plans and specifications prescribed by Heat Research. No control was exercised or retained by Heat Research over the fabrication process or in the operational methods Fabsteel chose or might choose to follow in manufacturing the radiant floor panels. The exact steps and order in which the radiant floor panels were fabricated was solely under the control of and determined by Fabsteel. The fabrication process was conducted only by Fabsteel employees.

Additionally, the evidence established Welch's injuries occurred not only due to methods adopted by Fabsteel, but also Fabsteel's failure to heed Heat Research's specifications. The plans supplied by Heat Research specified the panels were to be secured by use of one-half inch *heavy* hex bolts. In fabricating the floor panels, however, Fabsteel utilized *standard* one-half inch nuts and bolts.

The Court correctly ruled as a matter of law no duty owed Welch was breached and properly directed the verdict in favor of Heat Research.

AFFIRMED.