**Affirmed and Opinion filed July 25, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00676-CV

## SAMEERA ARSHAD AND ALMORFA, LLC, Appellants

## V.

## AMERICAN EXPRESS BANK, FSB, Appellee

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-69785**

# O P I N I O N

Appellants Sameera Arshad and Almorfa, LLC (the "Arshad Parties") appeal the final judgment in favor of appellee American Express Bank, FSB on its breach-of-contract claim based on the Arshad Parties' failure to pay their credit card debt. We affirm.

## I. BACKGROUND

The Arshad Parties obtained a "Business Gold Rewards" credit card from

American Express in 2012. Several years later, American Express sued them for breach of contract, alleging they had defaulted on the credit card by failing to pay under the Cardmember Agreement. American Express alleged they owed $316,007.19. The Arshad Parties filed a general denial and also pleaded the affirmative defense of statute of limitations.

*Business Records Affidavit*

American Express filed a notice of business records affidavit of Mario D. Morales-Arias, an assistant custodian of records for American Express. The records included the Cardmember Agreement and account statements showing charges made to the card and payments made on the account balance by the Arshad Parties. Before the start of the bench trial, American Express informed the trial court in open court that Morales-Arias would testify as to the authenticity of its records, which American Express would seek to introduce into evidence at trial, and "show the Court that they are kept within and pursuant to the regular course of business." American Express advised the trial court that it had provided the documents to the Arshad Parties in a business-records affidavit by Morales-Arias, which American Express had filed with the court, and that American Express also had produced the documents to the Arshad Parties through discovery.

*Admission of Business Records into Evidence*

The Arshad Parties objected to the use of the records and the testimony of Morales-Arias. They asserted that they did not receive the business-records affidavit and that the affidavit was not filed with the court. The trial court, however, confirmed that the business records affidavit had been filed with the court, and the Arshad Parties acknowledged that they had received the records through discovery. The Arshad Parties further objected to Morales-Arias testifying because American Express did not designate Morales-Arias as a witness; they sought the automatic

2

exclusion of his testimony under Texas Rule of Civil Procedure 193.6.[1]  American Express responded that it had provided Morales-Arias's name to the Arshad Parties in response to their requests for disclosures.  American Express further stated that it was designating Morales-Arias as its corporate representative at trial so it was not necessary to disclose him as a person with knowledge of relevant facts.

The trial court ruled that it would (1) allow American Express to call one witness; (2) not allow the business-records affidavit with the documents into evidence; (3) allow American Express to ask questions only about the documents produced during discovery; and (4) allow the Arshad Parties to cross-examine the witness, at which time the trial court would determine whether the documents would be admitted into evidence.  Morales-Arias was the only witness to testify at trial.  The trial court admitted the records that were produced in discovery into evidence.

*Final Judgment*

The trial court rendered a final judgment for American Express in the amount of $316,007.19.  At the Arshad Parties' request, the trial court issued findings of fact and conclusions of law.  The Arshad Parties timely filed this appeal from the final judgment.

## II. ISSUES ON APPEAL

In two issues, the Arshad Parties (1) claim that the trial court erred in overruling the Arshad Parties' objection to the testimony of Morales-Arias; and (2) challenge the legal and factual sufficiency of the evidence to support the judgment on American Express's breach-of-contract claim.

---

[1] *See* Tex. R. Civ. P. 193.6.

3

We do not address the Arshad Parties' issues in the order in which they were briefed. Issues, if sustained, that require the judgment to be reversed and rendered should be addressed first. *See* Tex. R. App. P. 43.3 (providing that when reversing a judgment, the appellate court must render judgment unless a remand is required); *In re S.R.*, 452 S.W.3d 351, 359 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("If disposition of an issue would result in a rendition of judgment, an appellate court should consider that issue before addressing any issues that would result only in a remand for a new trial."). Therefore, because the second issue includes a challenge to the legal sufficiency of the evidence to support the judgment, we address it first. *See Horrocks v. Tex. Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex. 1993) (per curiam) ("Ordinarily, an appellate court should render judgment after sustaining a complaint as to the legal sufficiency of the evidence.").

## A. Is the evidence legally and factually sufficient to support the judgment?

In their second issue, the Arshad Parties challenge the legal and factual sufficiency of the evidence to support American Express's breach-of-contract claim.

In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review the trial court's findings using the same standards of review applicable to a jury's verdict. *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009).

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could

and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. Our task is to determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* As long as the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the factfinder. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.*

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). When a party challenges the factual sufficiency of the evidence supporting a finding for which it did not have the burden of proof, we set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* at 407. We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp.*, 971 S.W.2d at 407. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *Id.*

### 1. The evidence is sufficient to establish a binding contract.

To establish a claim for breach of contract, a plaintiff must prove the following

elements: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith v. Smith*, 541 S.W.3d 251, 259 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The Arshad Parties challenge the existence of a valid contract. To prove the existence of a valid contract, a plaintiff must establish that (1) an offer was made; (2) the other party accepted in strict compliance with the offer's terms; (3) the parties had a meeting of the minds on the contract's essential terms; (4) each party consented to the those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

The Arshad Parties assert that there is no contract because there are no signatures. Contracts require mutual assent to be enforceable. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam). Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind. *Id.* Although signatures and delivery evince the mutual assent required for a contract, they are not essential. *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 277 (Tex. 2015). "[A] contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent. If a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto, there is a written contract." *Id.* (internal quotations and citations omitted).

The Cardmember Agreement states in relevant part:

When you or an Additional Cardmember, as defined below, use the Account (or sign or keep a card), you and the Additional Cardmember agree to the terms of the Agreement.

6

The Cardmember Agreement provides that by using, signing, or keeping the card, the Arshad Parties agreed to the terms of the agreement. In its written findings of fact and conclusions of law, the trial court found that the Arshad Parties "requested a card from [American Express] and used the card issued by [American Express]." The trial court also found that the Arshad Parties "were sent monthly billing statements"; "made payments on the account"; and "were aware of the charges and agreed to the terms of payment in the Card Member [sic] Agreement."

The Arshad Parties do not dispute that the card was delivered to Sameera Arshad or that Sameera Arshad kept and used the card. The statements reflect the charges made on the account and the payments made. These actions manifested the Arshad Parties' intent that the agreement become effective. *Duran v. Citibank (S.D.), N.A.*, No. 01-06-00636-CV, 2008 WL 746532, at *4 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, no pet.) (mem. op.) (holding that the bank established the existence of a valid contract as a matter of law by showing that the appellant used the card and made some payments manifesting an intent that the agreement become effective in breach-of-contract action); *Hinojosa v. Citibank (S.D.), N.A.*, No. 05-07-00059-CV, 2008 WL 570601, at*3 (Tex. App.—Dallas Mar. 4, 2008, pet. denied) (mem. op.) (holding that the appellant's acceptance and use of card established the existence of a contract as a matter of law in breach-of-contract action); *Ghia v. Am. Express Travel Related Servs.*, No. 14-06-00653-CV, 2007 WL 2990295, at *2 (Tex. App.—Houston [14th Dist.] Oct. 11, 2007, no pet.) (mem. op.) (holding that the appellant accepted the terms of the credit card agreement by retaining and using the card in breach-of-contract action); *Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197, 204 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that the appellant's conduct in using the card and making payments on the account for the purchases and charges reflected on her monthly billing statements manifested

7

her intent that the contract become effective in breach-of-contract action).

The Arshad Parties suggest that the trial court sua sponte allowed American Express to recover on the theory of "account stated," which they posit has a lower threshold for proof than a claim for breach of contract. To establish the right to recover under the common-law claim of account stated, the creditor must show the following: (1) transactions between the parties give rise to indebtedness of one to the other; (2) an agreement, express or implied, between the parties that fixes the amount due; and (3) the party to be charged makes a promise, express or implied, to pay the indebtedness. *Busch v. Hudson & Keyes*, LLC, 312 S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Because an agreement on which an account-stated claim is based can be express or implied, a creditor need not produce a written contract to establish the agreement between the parties; an implied agreement can arise from the parties' acts and conduct. *Id.*

We reject the Arshad Parties' contention that the trial court rendered judgment on a claim for account stated. The trial court concluded that the Arshad Parties "breached the contract by failing to pay [American Express] in accordance with the terms of the contract." As addressed above, American Express established an express written contract with the Arshad Parties as required to recover on its breach-of-contract claim. *See Duran*, 2008 WL 746532, at *4; *Hinojosa*, 2008 WL 570601, at*3; *Ghia*, 2007 WL 2990295, at *2; *Winchek*, 232 S.W.3d at 204.

## 2. The evidence is sufficient to prove American Express's damages.

The Arshad Parties further claim that American Express did not prove its damages because the agreement does not identify an interest rate. The Cardmember Agreement, which was introduced into evidence, states when American Express charges interest, how it calculates interest, and how it determines the Prime Rate. But, the Cardmember Agreement does not state that American Express charges

8

interest.  A review of the account statements, which were also in evidence, reflects that American Express did not charge interest on the overdue balance.  The Arshad Parties do not otherwise assert that American Express could not calculate and prove its damages.  The trial court expressly found that the damages are $316,007.97, an amount reflected in the last account statement showing the outstanding balance.

3. **The evidence is sufficient to establish that a second card user was authorized.**

The Arshad Parties also assert that the record contains no evidence that a second card user, Arshad Dhillon, was authorized.  As to Additional Cardmembers, the Cardmember Agreement states:

> At your request, we may issue cards to *Additional Cardmembers*.  They do not have accounts with us but they can use your Account subject to the terms of this Agreement.
>
> You are responsible for all use of the Account by Additional Cardmembers and anyone they allow to use the Account.  You must pay for all charges they make.  You must share this Agreement with all Additional Cardmembers.
>
> You must tell Additional Cardmembers that:
>
> we may obtain, provide and use information about them.
>
> their use of the Account is subject to this Agreement.
>
> You authorize us to give Additional Cardmembers information about the Account and to discuss it with them.
>
> If you want to cancel an Additional Cardmember's right to use your Account (and cancel their card) you must tell us.

The trial court did not make an express finding that Dhillon was an Additional Cardholder.  The Cardmember Agreement provides that an additional card will be issued at the request of the original card holder.  The Arshad Parties rely on Morales-Arias's testimony that there was nothing in American Express's records to show that a request was made for an Additional Cardmember.  The account statements show

that Arshad Dhillon was charging to the account as an Additional Cardmember and the Arshad Parties made payments on Dhillon's purchases. If the Arshad Parties had a dispute regarding Dhillon having a card and charging purchases to the Arshad Parties' account, they failed to contact American Express. The evidence supports the trial court's implied finding that Dhillon was an authorized Additional Cardmember.

Under the applicable standards of review, we conclude that the evidence at trial is legally and factually sufficient to support the trial court's rendition of judgment based on American Express's breach-of-contract claim against the Arshad Parties. *See Smith*, 541 S.W.3d at 259; *Duran*, 2008 WL 746532, at *4; *Ghia*, 2007 WL 2990295, at *2; *Winchek*, 232 S.W.3d at 204.

### 4. There was no acceleration of the maturity of debt.

The Arshad Parties argue that the record contains no evidence there is no evidence or insufficient evidence of acceleration of maturity. "Acceleration is a harsh remedy with draconian consequences for the debtor and Texas courts look with disfavor upon the exercise of this power because great inequity may result." *Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no pet.). Accelerated maturity is associated with notes that are initially contemplated to extend over a period of months or years, such as those used with installment loans. *See Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863, 866 (Tex. 1975). Because acceleration is considered a harsh remedy, courts construe any ambiguous clause providing for acceleration against acceleration. *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 569 (Tex. App.—San Antonio 2014, pet. denied).

The Arshad Parties' credit-card debt is not an installment loan. *See* 7 Tex. Admin. Code § 83.102(12) (Officer of Consumer Credit Commissioner, Definitions)

10

("Installment loan—Any type of closed-end loan with multiple scheduled payments."). Credit-card indebtedness is not the type of debt to which acceleration of maturity applies. Moreover, a review of the Cardmember Agreement shows that it does not contemplate acceleration, as the contract contains no clause providing for acceleration. Consistent with the lack of any term in the Cardmember Agreement providing for acceleration, the trial court made no findings of facts on acceleration.

We overrule the Arshad Parties' second issue.

## B. Did the trial court err by overruling the Arshad Parties' objection to the testimony of Morales-Arias?

In their first issue, the Arshad Parties complain that the trial court should have excluded Morales-Arias from testifying because American Express did not (1) designate Morales-Arias as its corporate representative at trial, (2) provide Morales-Arias's address and phone number, (3) establish that failing to designate Morales-Arias as a corporate representative at trial did not unfairly surprise or unfairly prejudice the Arshad Parties, or (4) show good cause for failing to timely identify Morales-Aria as a witness.

A party who fails to make, amend, or supplement a discovery response in a timely manner may not offer the testimony of a witness, other than a party, who was not timely identified, unless the court finds that there was good cause for the failure or the failure will not unfairly surprise or unfairly prejudice another party. Tex. R. Civ. P. 193.6(a); *Adeleye v. Driscal*, 544 S.W.3d 467, 478 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The burden of establishing good cause or lack of unfair surprise or unfair prejudice rests on the party seeking to call the witness, and the record must support such findings. *Trevino v. City of Pearland*, 531 S.W.3d 290, 299 (Tex. App.—Houston [14th Dist.] 2017, no pet). The trial court has discretion to determine whether the party seeking to introduce the evidence has met its burden.

11

*Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 882 (Tex. 2009) (per curiam). Thus, we review a trial court's finding under Rule 193.6 for an abuse of discretion. *Trevino*, 531 S.W.3d at 299.

### 1. American Express designated Morales-Arias as its corporate representative at trial.

The Arshad Parties assert that American Express never designated Morales-Arias as its corporate representative at trial. Rule 193.6's exclusion provision does not apply to a party. *See* Tex. R. Civ. P. 193.6 (providing that rule mandating exclusion of witness testimony for failure to disclose witness does not apply to a named party). Corporations can act only through human agents of the corporation and "when an officer or corporate representative acts on behalf of a corporate entity, that act is the act of the corporation itself." *Speedy Stop Food Stores, Ltd. v. Reid Rd. Mun. Util. Dist. No. 2*, 282 S.W.3d 652, 656 n.2 (Tex. App.—Houston [14th Dist.] 2009), *aff'd*, 337 S.W.3d 846 (Tex. 2011). American Express was entitled to have a corporate representative present at the trial. This court has held that a trial court may not exclude the testimony of a corporate representative at trial, even if the corporation fails to disclose the representative as a witness in its discovery responses. *See In re M.P.J.*, No. 14-03-00746-CV, 2004 WL 1607507, at *3 (Tex. App.—Houston [14th Dist.] Jul. 20, 2004, pet. denied) (mem. op.).

The Arshad Parties further posit that the corporate representative "must be qualified to testify for the corporation and have the requisite personal knowledge to authenticate the evidence he attempts to authenticate for the corporation." At the beginning of the proceedings, American Express announced to the trial court that Morales-Arias would serve as its designated corporate representative at trial. The Arshad Parties cite no authority requiring a corporate party to designate its corporate representative by a certain date before trial or that only certain individuals can be

designated as a corporate representative. The Arpad Parties have not shown that the trial court erred in allowing American Express to designate its corporate representative at the beginning of trial. American Express demonstrated that Morales-Arias was qualified to testify about the authenticity of the records, and the Arshad Parties did not object on the basis that Morales-Arias's was not qualified to testify about that subject matter. Because Morales-Arias was American Express's corporate representative at trial, the trial court had no authority to exclude Morales-Arias's testimony, even if American Express had failed to disclose Morales-Arias as a witness. *See In re M.P.J.*, 2004 WL 1607507, at \*3. Thus, the trial court did not abuse its discretion in failing to exclude Morales-Arias from testifying under Rule 193.6(a). *See id*. We need not address the Arshad Parties' arguments that American Express did not provide Morales-Arias's phone number and that American Express's failure to identify Morales-Arias as a fact witness unfairly surprised and unfairly prejudiced the Arshad Parties.[2] We overrule the Arshad Parties' first issue.

Having overruled the Arshad Parties' issues, we affirm the judgment of the trial court.


/s/     Kem Thompson Frost
        Chief Justice


Panel consists of Chief Justice Frost and Justices Spain and Poissant.

---

[2] Even if we were required to address these arguments, we would conclude that they lack merit.

13